# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

GARY MCCARVER,                )
                              )
    Plaintiff,            )
                              )
v.                            )   Case No.:  4:20-cv-01053-JHE
                              )
COMMISSIONER OF SOCIAL        )
SECURITY,                     )
                              )
    Defendant.            )

## MEMORANDUM OPINION[1]

Plaintiff Gary McCarver ("McCarver") seeks review, pursuant to 42 U.S.C. § 405(g) and § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his request for supplemental security income ("SSI"). (Doc. 1).  McCarver timely pursued and exhausted his administrative remedies.  This case is therefore ripe for review under 42 U.S.C. § 405(g). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

## I. Factual and Procedural History

On September 18, 2017, McCarver protectively filed an application for SSI.  (Tr. 11, 220-25).  The Commissioner initially denied McCarver's claim (tr. 145-49), and McCarver requested a hearing before an ALJ (tr. 152-54).  After an August 14, 2019 hearing, the ALJ denied McCarver's claim on November 13, 2019.  (Tr. 8-32).  McCarver sought review by the Appeals Council, but it denied his request for review on July 9, 2020.  (Tr. 1).  On that date, the ALJ's

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties in this case have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment.  (Doc. 15).

decision became the final decision of the Commissioner.  On July 24, 2020, McCarver initiated this action.  (Doc. 1).

McCarver was forty-three years old on the date the ALJ rendered his decision.  (Tr. 24, 26).  McCarver has an associate's degree and past relevant work as a registered nurse, store laborer, order clerk, and final assembler.  (Tr. 24, 45, 63).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed.  The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.*  It is "more than a scintilla, but less than a preponderance." *Id.*

This court must uphold factual findings that are supported by substantial evidence.  However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied.  *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993).  If the court finds an error in the ALJ's application of the law,

---

[2] In general, the legal standards applied are the same whether a claimant seeks SSI or disability insurance benefits ("DIB"). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

> (1)     whether the claimant is currently employed;
> (2)     whether the claimant has a severe impairment;
> (3)     whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
> (4)     whether the claimant can perform his or her past work; and
> (5)     whether the claimant is capable of performing any work in the national economy.

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

3

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job."  *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

### IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found McCarver had not engaged in substantial gainful activity since September 18, 2017.  (Tr. 13).  At Step Two, the ALJ found McCarver has the following severe impairments: chronic respiratory disorders, carpal tunnel syndrome, anxiety, depressive, bipolar, and related disorders.  (Tr. 14).  At Step Three, the ALJ found McCarver does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  (Tr. 15).

Before proceeding to Step Four, the ALJ determined McCarver's residual functioning capacity ("RFC"), which is the most a claimant can do despite his impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined McCarver has the RFC

> to perform sedentary work as defined in 20 CFR 416.967(a) except he can
> occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds.
> He can perform frequent balancing and occasional stooping, kneeling, and
> crouching, but never crawling.  He can frequently handle and finger bilaterally.
> He must avoid frequent exposure to extreme cold or extreme heat, humidity,

4

and wetness.  He must avoid even occasional exposure to dust, odors, fumes, and pulmonary irritants.  He is able to understand, remember, and carry out short, simple instructions, with routine supervision at a slowed pace, but can still maintain and [sic] acceptably consistent work pace.  He can tolerate occasional interaction with the public in the performance of work related tasks. He can respond appropriately to changes in the routine work setting with [sic] are gradually introduced and infrequent.  Time off task can be accommodated by normal work breaks.

(Tr. 16).  At Step Four, the ALJ determined McCarver could perform past relevant work as a final assembler.  (Tr. 24).  Alternatively, the ALJ determined there were other jobs existing in significant numbers in the national economy that McCarver could also perform, considering his age, education, work experience, and RFC.  (*Id.*).  Therefore, the ALJ determined McCarver has not been under a disability and denied his claim.  (Tr. 26).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. McCarver*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

McCarver argues the ALJ erred in three ways: by (1) failing to properly weigh the opinion of examining psychologist Dr. June Nichols; (2) erroneously concluding McCarver did not meet Listing 12.04 and 12.06 of 20 C.F.R. § 404.00, Subpart P, Appendix 1; and (3) finding McCarver could perform past work.

**A. The ALJ Did Not Err in Assessing Dr. Nichols' Opinion**

McCarver contends the ALJ inappropriately assessed Dr. Nichols' opinion when he found it to be unpersuasive. (Doc. 16 at 24-31). For claims filed on or after March 27, 2017, such as this case, an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ is required to "articulate in [his or her] determination or decision how persuasive [he or she] find[s] all of the medical opinions," 20 C.F.R. § 404.1520c(b), taking into account the following five factors:

  (1) Supportability
  (2) Consistency
  (3) Relationship with the claimant (which includes)
       (i) Length of the treatment relationship
       (ii) Frequency of examinations
       (iii) Purpose of the treatment relationship
       (iv) Extent of the treatment relationship
       (v) Examining relationship
  (4) Specialization
  (5) Other factors

20 C.F.R. § 404.1520c(c). The ALJ must explain how he or she considered the factors of supportability and consistency—the most important factors—and may (but is not required to) explain how he or she considered the other remaining factors. 20 C.F.R. § 416.920c(b)(2). "Supportability" is a function of how well the medical source explained his or her findings: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20

C.F.R. § 416.920c(c)(1).  "Consistency" concerns how the opinion relates to "the evidence from other medical sources and nonmedical sources in the claim."  20 C.F.R. § 416.920c(c)(2).

Dr. Nichols evaluated McCarver on August 5, 2019.  (Tr. 927-34).  McCarver recounted a history of depression, anxiety, opioid abuse (now ceased), and heavy drinking (also now ceased).  (Tr. 927-29).  McCarver also stated he had been hospitalized with a high fever three years prior and developed ARDS (acute respiratory distress syndrome), after which he had a lack of energy, shortness of breath, and memory problems.  (Tr. 928).  McCarver described his memory problems as: "I can't remember conversations from last week.  I won't remember things that we talked about today."  (*Id.*).

On examination, Dr. Nichols described McCarver as a "neat and clean individual" with good eye contact and clear speech at a normal rate.  (Tr. 929).  Dr. Nichols indicated McCarver had an anxious and depressed mood with a tearful affect through much of the evaluation.  (*Id.*).  McCarver reported difficulty sleeping, low energy, and anhedonia with crying episodes. But denied suicidal or homicidal ideation.  (*Id.*).  McCarver was oriented to time, person, place, and situation and his thought processes were within normal limits, with no evidence of confusion, loose associations, tangentiality, flight of ideas, or thought blocking.  (Tr. 930).  McCarver's conversation pace was somewhat pressured.  (*Id.*).  His thought content was negative for auditory or visual hallucinations, with no evidence of delusions (although he experienced ideas of reference) and no apparent internal psychotic process.  (*Id.*).  McCarver denied obsessions or compulsions but confirmed panic attacks.  (*Id.*).  Dr. Nichols considered McCarver's judgment and insight to be good.  (*Id.*).

Dr. Nichols examined McCarver in a variety of areas.  She tested his speed of mental processing, finding it to be adequate, with no significant problem with mental control.  (*Id.*).

McCarver was able to count from twenty to one in eighteen seconds with no error, could perform serial threes and serial sevens, could spell "world" backwards, and could perform addition, subtraction, and multiplication. (*Id.*). As far as McCarver's memory, Dr. Nichols found his recent memory and remote functions to be grossly intact. (*Id.*). She described his immediate memory functions as "fair," noting McCarver could name three objects, recall two objects after a ten-minute period, and repeat five digits forwards and four digits backward. (*Id.*). Without elaboration, she stated "he demonstrated some problems with working memory." (*Id.*). Dr. Nichols asked McCarver questions from the Adult ADHD Self-Report Scale Symptom Checklist and determined McCarver's responses supported a diagnosis of ADHD, Predominately Inattentive Presentation. (*Id.*). Dr. Nichols described McCarver's general fund of knowledge as adequate, but his awareness of current events as poor. (*Id.*). Finally, Dr. Nichols concluded McCarver's thinking was abstract, with a Scale Score of 9 on Information and a 9 on Similarities, yielding a prorated Verbal Comprehension Index of 95, in the average range. (*Id.*).

After listing McCarver's self-reported daily activities, Dr. Nichols listed the following symptoms reported by McCarver in the last six months: depressed mood, diminished interests or pleasure, sleep disturbance, fatigue, change in appetite, hopelessness, weight changes, agitation, excessive worry, feeling of loss of control, irritability, poor concentration, tension, feelings of panic, social withdrawal, anxiety in social settings, makes careless mistakes, forgetful, confusion at times, compulsive checking/counting, indecisiveness, people talking about him, feeling emotionally distant from others, racing thoughts, sexual problems, not liking his body, intense fear of weight gain, impulsive, have tried to hurt himself in the past, sometimes wishes he were dead, recurrent distressing dreams. (*Id.*). In summary, Dr. Nichols concluded:

He continues to struggle with anxiety, depression and panic attacks and he is rarely able to venture out in public. He does not drive unless it is absolutely necessary. He tends to stay secluded in his aunt's home.  He does not trust own decision making and depends on his aunt.  She is handling all financial obligations at this time.  Because of all these problems, he would have a great deal difficulty in any type of work setting. He would have difficulty with the task as well as the interpersonal aspects of any job setting.  His ability to withstand the pressures of day to day occupational functioning is highly impaired.  He is on medication which helps to some extent, but he and his doctor have been unable to find anything to resolve symptoms.  His memory deficits appear to have become more than what would be expected with ADHD, since experiencing several days with high fever two years ago.  He experiences difficulty with naming familiar objects, knowing what he wants to say, but having words come out in different order, confusion, "forgetting" events shortly after they occur.

(Tr. 931).  Dr. Nichols' Axis I diagnostic impressions were: Major Depressive Disorder, Recurrent, Severe, without Psychotic Features; Panic Disorder; Generalized Anxiety Disorder; Attention Deficit Hyperactivity Disorder, Predominately Inattentive Presentation; Opioid Use Disorder, in remission; and Alcohol Use Disorder, in remission.  (*Id.*).

Accompanying her report, Dr. Nichols provided a Mental Health Source Statement.  (Tr. 934).  In that statement, Dr. Nichols circled "yes" when asked if McCarver could understand, remember, and carry out very short and simple instructions, but "no" to questions asking if McCarver could do the following: (1) maintain attention, concentration, and/or pace for periods of at least two hours; (2) perform activities within a schedule and be punctual within customary tolerances; (3) sustain an ordinary routine without special supervision; (4) adjust to routine and infrequent work changes; (5) interact with supervisors and co-workers; and (6) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness.  (*Id.*).  Dr. Nichols stated McCarver would be off-task for 40-50% of an eight-hour day and be absent from work more than 15 days out of 30 due to his psychological symptoms.  (*Id.*).  Dr. Nichols also indicated McCarver's limitations existed back to July 19, 2017 and would not improve to the point of non-

disability in the absence of drug and alcohol use. (*Id.*). Finally, Dr. Nichols described the side effects of McCarver's medications as "can be drowsy, weight gain." (*Id.*).

After summarizing Dr. Nichols' findings, the ALJ found the significant limitations she imposed "do not comport with the results of his [sic] mental status examination of estimations of average cognitive function." (Tr. 21). The ALJ also stated the limitations "appear to be based on subjective reports of the claimant rather than the objective clinical findings." (*Id.*). Accordingly, the ALJ found Dr. Nichols' opinion to be unpersuasive. (*Id.*).

McCarver argues this case is "controlled by *McClurkin v. SSA*, 625 [F. App'x] 960 (11th Cir. 2015), in which the Eleventh Circuit reversed the denial of benefits because the ALJ failed to state with at least 'some measure of clarity' the grounds for his decision in **repudiating the opinion of an examining physician**." (Doc. 16 at 27-28) (emphasis in original). First, this case is not "controlled" by *McClurkin* because *McClurkin* is an unpublished decision. *See United States v. Izurieta*, 710 F.3d 1176, 1179 (11th Cir. 2013) ("Unpublished opinions are not binding precedent"); 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority."). Second, *McClurkin* applied a regulation that does not apply to McCarver's claim.[4] *McClurkin*, 625 F. App'x at 962 (citing 20 C.F.R. § 404.1527(b), applicable to claims filed before March 27, 2017). Third, as explained below, the ALJ's opinion as a whole provides support for his decision to find Dr. Nichols' opinion unpersuasive, so there is sufficient clarity for the court to conduct a meaningful review.

---

[4] Even under the old regulation, the ALJ was not required "to defer to the opinion of a physician [like Dr. Nichols] who conducted a single examination, and who was not a treating physician." *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 Fed. App'x 875, 877 (11th Cir. 2013).

The ALJ was required by 20 C.F.R. § 416.920c(b)(2) to explain how he considered both supportability and consistency.  Although his opinion does not use those specific words, it is clear from its totality that he adequately supported both.  The first of the ALJ's stated reasons for finding Dr. Nichols' opinion unpersuasive—Dr. Nichols' estimations of "average cognitive functioning"—relates directly to supportability.  Dr. Nichols' examination revealed essentially normal findings contradicting her extremely limiting restrictions.  For example, McCarver "presented as a neat and clean individual" during the examination (tr. 929), but Dr. Nichols found McCarver could not maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness (tr. 934).  The only significantly abnormal findings Dr. Nichols included in her report of examination were her indication McCarver "demonstrated some problems with working memory," and self-reported symptoms consistent with ADHD.  (Tr. 930).  However, she described McCarver's recent memory functions as "grossly intact," his immediate memory functions as "fair," and his remote functions as "grossly intact," and the results of her testing— McCarver's ability to name three objects and recall two objects after a ten-minute period, repeating five digits forwards and four digits backwards—do not appear to support the conclusion derived in her summary (and reflected in the limitations she imposed in her Mental Health Source Statement) that McCarver suffered from extensive memory deficits greater than what would be expected with an ADHD diagnosis, including difficulty naming familiar objects.  (Tr. 930-31).

Second, as confirmed by the mostly normal examination results, the ALJ was correct that the significant limitations imposed in Dr. Nichols' Mental Health Source Statement relied heavily on McCarver's subjective reports.  While the ALJ did not directly indicate in his discussion of Dr. Nichols' opinion why it was problematic for her to do so, other portions of his opinion reveal why this is the case.  Early in his analysis, the ALJ made a credibility finding that McCarver's subjective

complaints as a general matter were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 18). Further in his decision, the ALJ specifically discussed why he discounted McCarver's statements regarding his mental health symptoms. Specifically, the ALJ found: (1) "[t]here was very little treatment of mental health impairments in the record during the relevant period"; (2) "[a]lthough the claimant reported memory loss, there is no objective evidence in the record to support this allegation"; (3) per Dr. Nichols' evaluation, McCarver's cognitive function was in the average range; and (4) McCarver denied needing reminders to take his medication and the medical records supported excellent compliance with his methadone doses. (Tr. 23). Notably, McCarver does not challenge any of these findings, nor does he explain why his subjective reports are due to be credited. Taken together, this demonstrates Dr. Nichols' opinion relying on McCarver's subjective reports was not consistent with the record. *See Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 528 (11th Cir. 2015) (finding ALJ appropriately discounted medical opinion based on claimant's subjective reports where ALJ elsewhere explained there were "good reason[s] for questioning the reliability of the claimant's subjective complaints."). Although the ALJ did not explicitly state he was considering the consistency factor in 20 C.F.R. § 416.920c(c)(2) when discussing McCarver's subjective reports in the context of Dr. Nichols' opinion, the totality of the ALJ's analysis makes it clear that he considered consistency in addition to supportability. *Cf. Heppell-Libsansky v. Comm'r of Soc. Sec.,* 170 F. App'x 693, 698 n.4 (11th Cir. 2006) (under previous regulations, no reversible error for failing to explicitly assign weight to treating physicians' opinion as required by regulations when weight assigned was clear from the record).

   To the extent McCarver argues the ALJ substituted his opinion for that of Dr. Nichols (doc. 16 at 29-31), McCarver does not explain why the ALJ should have credited an opinion he found

unpersuasive when the regulations expressly contemplate that he is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," 20 C.F.R. § 404.1520c(a). In any case, as the Commissioner points out, the ALJ's job is to determine the claimant's RFC, and is not required to based that RFC on a doctor's opinion. (Doc. 17 at 11) (citing, e.g., *Castle v. Colvin*, 557 F. App'x 849, 853-54 (11th Cir. 2014)).

McCarver has not identified any reversible error in the ALJ's assessment of Dr. Nichols' opinion, and the undersigned finds that assessment is supported by substantial evidence. Therefore, reversal is unwarranted on McCarver's first claim of error.

### B. Substantial Evidence Supports McCarver Does Not Meet Listing 12.04 or 12.06

McCarver states the ALJ should have found he meets Listing 12.04, which addresses depressive, bipolar, and related disorders, and Listing 12.06, which deals with anxiety and obsessive-compulsive disorders. (Doc. 16 at 31-32). At Step Three of the Sequential Evaluation Process, the ALJ determines if the claimant has an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. The Listing of Impairments (or "Listings") describes conditions that are so severe as to prevent a person from performing any gainful activity. *See* 20 C.F.R. § 404.1525(a); *Wilson*, 284 F.3d at 1224. Thus, a claimant meets his burden of proving disability if he establishes that his impairments meet[5] or equal[6] an impairment in the Listings. *See* 20 C.F.R. § 404.1520(a)(4)(iii), (d); *Doughty v.*

---

[5] "To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." *Wilson*, 284 F.3d at 1224 (citations omitted); see 20 C.F.R. § 404.1525 (2015). Further, "[f]or a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

[6] "To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'" *Wilson*, 284 F.3d at 1224; see 20 C.F.R. § 404.1526; *Sullivan v. Zebley*,

*Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). "For a claimant to show that his impairment matches

a listing, it must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530

(1990). The burden is on the claimant to demonstrate that his condition meets (or equals) a listed

impairment. *See Bell v. Bowen*, 796 F.2d 1350, 1353 (11th Cir. 1986); *Sogue v. Colvin*, NO. 2:13-

cv-375-N (S.D. Ala. Apr. 30, 2014).

In relevant part, the listings McCarver identifies state as follows:

12.04 Depressive, bipolar and related disorders (see 12.00B3), satisfied by A
and B, or A and C:[7]

    A. Medical documentation of the requirements of paragraph 1 or 2:
        1. Depressive disorder, characterized by five or more of the
        following:
            a. Depressed mood;
            b. Diminished interest in almost all activities;
            c. Appetite disturbance with change in weight;
            d. Sleep disturbance;
            e. Observable psychomotor agitation or retardation;
            f. Decreased energy;
            g. Feelings of guilt or worthlessness;
            h. Difficulty concentrating or thinking; or
            i. Thoughts of death or suicide.
        2. Bipolar disorder, characterized by three or more of the
        following:
            a. Pressured speech;
            b. Flight of ideas;
            c. Inflated self-esteem;
            d. Decreased need for sleep;
            e. Distractibility;
            f. Involvement in activities that have a high probability of
            painful consequences that are not recognized; or
            g. Increase in goal-directed activity or psychomotor
            agitation.

---

493 U.S. 521, 530-32 (1990). McCarver does not argue he equals any listing, only that he meets
them.

   [7] Both listings have "Paragraph C" criteria which (in the alternative to showing the
Paragraph B criteria) can be combined with Paragraph A to show a claimant meets the listing, but
the ALJ found the Paragraph C criteria did not apply (tr. 16) and McCarver does not argue they
apply either.

AND

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
    1. Understand, remember, or apply information (see 12.00E1).
    2. Interact with others (see 12.00E2).
    3. Concentrate, persist, or maintain pace (see 12.00E3).
    4. Adapt or manage oneself (see 12.00E4).

[ . . . ]

12.06 Anxiety and obsessive-compulsive disorders (see 12.00B5), satisfied by A and B, or A and C:

A. Medical documentation of the requirements of paragraph 1, 2, or 3:
    1. Anxiety disorder, characterized by three or more of the following;
        a. Restlessness;
        b. Easily fatigued;
        c. Difficulty concentrating;
        d. Irritability;
        e. Muscle tension; or
        f. Sleep disturbance.
    2. Panic disorder or agoraphobia, characterized by one or both:
        a. Panic attacks followed by a persistent concern or worry about additional panic attacks or their consequences; or
        b. Disproportionate fear or anxiety about at least two different situations (for example, using public transportation, being in a crowd, being in a line, being outside of your home, being in open spaces).
    3. Obsessive-compulsive disorder, characterized by one or both:
        a. Involuntary, time-consuming preoccupation with intrusive, unwanted thoughts; or
        b. Repetitive behaviors aimed at reducing anxiety.

AND

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
    1. Understand, remember, or apply information (see 12.00E1).
    2. Interact with others (see 12.00E2).
    3. Concentrate, persist, or maintain pace (see 12.00E3).
    4. Adapt or manage oneself (see 12.00E4).

20 C.F.R. § 404.00, Subpart P, Appendix 1.

McCarver's argument simply sets out the Paragraph A and Paragraph B criteria for each listing, accompanied by citations to exhibits in the record for each criterion.  He provides no explanation for how any of the records he cites demonstrate he meets either listing; his citations do not even provide page numbers or descriptions of the evidence he contends supports his argument.  Contrary to McCarver's general argument, though, the ALJ reviewed the Paragraph B criteria and found McCarver did not have a marked or extreme limitation in even one area of mental functioning.  (Tr. 15-16).  The ALJ determined McCarver had a moderate limitation in understanding, remembering, or applying information, citing McCarver's function report showing he did not need reminders to take medication or take care of personal needs, prepared simple meals and performed household chores, used supplemental oxygen when performing various tasks, drove and went places alone, shopped for food and household items, and paid bills, counted change, and handled bank accounts.  (Tr. 15).  As to interacting with others, the ALJ found McCarver had a mild limitation, owing to his communication and occasional visits with others and absence of problems getting along with family, friends, neighbors, or authority figures.  (*Id.*).  The ALJ concluded McCarver had a moderate limitation in concentrating, persisting, or maintaining pace due to his reports of difficulty paying attention and following instructions.  (*Id.*).  Finally, the ALJ determined McCarver had a mild limitation in adapting and managing himself, citing the same function report evidence he cited for understanding, remembering, or applying information and for interacting with others.  (Tr. 16).  A review of the record, including the portions McCarver cites, does not undermine any of these conclusions.

Without some explanation for how the ALJ's assessments are incorrect or any obvious deficiency in those assessments, McCarver has not demonstrated he met his burden at the

16

administrative level to prove he met a listing.  Accordingly, substantial evidence supports the ALJ's determination McCarver does not meet Listing 12.04 or 12.06.

### C. The ALJ's Determination McCarver Can Perform Past Work Was Supported by Substantial Evidence

Finally, McCarver argues the ALJ did not consider the duties of his past work as a final assembler.  (Doc. 16 at 32-39).  A claimant bears the burden of proving he cannot perform his past relevant work either as he performed the job or as the job is generally performed in the national economy. *See Barnes v. Sullivan*, 932 F.2d 1356, 1359 (11th Cir. 1991).  "The ALJ may rely on a VE's testimony regarding the physical and mental demands of the claimant's past work. The ALJ also may consider the job descriptions set forth in the DOT." *Simpson v. Comm'r of Soc. Sec.*, 423 F. App'x 882, 884 (11th Cir. 2011) (citing 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2))).  "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). "[T]he ALJ is not required to include findings in the hypothetical that the ALJ has found to be unsupported." *Yates v. Comm'r of Soc. Sec.*, 706 Fed. App'x 588, 593 (11th Cir. 2017).

As a preliminary matter, even if the ALJ had erred in finding McCarver could perform his past work, McCarver does not address the ALJ's alternative finding there were other jobs existing in significant numbers in the national economy that McCarver could also perform, considering his age, education, work experience, and RFC (tr. 24).  Thus, it appears the ALJ's error would be harmless, and reversal unwarranted, even if McCarver's argument held water.  *See Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1009 (11th Cir. 2020) (holding ALJ's error in determining

claimant could perform job as an order clerk was harmless where ALJ correctly determined claimant was qualified to perform other jobs).

As far as the merits of McCarver's argument, the ALJ was entitled to rely on the VE's testimony, so McCarver's implication that the ALJ did not develop evidence of the physical requirements of his past work is a nonstarter.  Apparently arguing his actual limitations are inconsistent with his past work, McCarver points to his own testimony at the hearing to support that he is depressed to the point where he does not feel like bathing daily, has shortness of breath and anxiety resulting from that, memory and lung damage from a hospitalization in 2017, sleepiness from his medication, and uses oxygen to sleep at night and an inhaler two or three times a day.  (Doc. 16 at 33).  While McCarver implies these limitations conflict with the duties of his past work,[8] his argument relies on the assumption the ALJ credited these subjective complaints. As discussed above, the ALJ did not find McCarver's subjective complaints were entirely credible. (Tr. 18).  McCarver does not challenge that credibility finding, but even if he did, the ALJ explained that: (1) no objective evidence supported McCarver's claims of memory loss; (2) McCarver's oxygen saturations at his appointments were consistently in the 97 to 98 percent range, and McCarver was able to manage his respiratory symptoms with medication, inhalers, and nebulizer treatments at home; and (3) McCarver's testimony regarding limited daily activities was at odds with his function report.  (Tr. 23).  McCarver provides no reason why his testimony trumps this analysis.  On the contrary, a review of the record shows it was supported by substantial evidence.

---

[8] McCarver does not point to anything specific about the final assembler job that conflicts with any of the limitations he identifies.

McCarver has identified no error in the ALJ's determination he could perform his past work as a final assembler.  Since the undersigned concludes that determination was supported by substantial evidence, reversal is not warranted.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying McCarver's claim for supplemental security income is **AFFIRMED**.

DONE this 22nd day of March, 2022.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE